## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WHIRLPOOL CORPORATION,<br><br>      Plaintiff,<br> v.<br><br>UNITED STATES,<br>      Defendant. | **Court No. 14-00199** |

## COMPLAINT

Plaintiff Whirlpool Corporation ("Plaintiff"), by and through its counsel, hereby alleges and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. Plaintiff contests the August 4, 2014 final scope ruling of the U.S. Department of Commerce ("the Department" or "Commerce") in which the Department determined that certain kitchen appliance door handles with plastic end caps and certain kitchen appliance door handles without plastic end caps fall within the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China ("PRC"). *See* Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, through Melissa G. Skinner, Director, Office III, Operations, from Eric B. Greynolds, Program Manager, Office III, Antidumping and Countervailing Duty Operations, Regarding Final Scope Ruling on Kitchen Appliance Door Handles With Plastic End Caps and Kitchen Appliance Door Handles Without Plastic End Caps (August 4, 2014) ("Scope Ruling").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) as this action is filed pursuant to sections 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi), to review a final determination by the Department as to whether merchandise is within the scope of antidumping and countervailing duty orders.

## STANDING OF PLAINTIFF

3. Plaintiff is a United States importer of subject merchandise that the Department has held to be within the scope of the *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (May 26, 2011) and the *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (May 26, 2011) in the Scope Ruling. Therefore, Plaintiff is an interested party within the meaning of 19 U.S.C. § 1516a(f)(3), 19 U.S.C. § 1677(9)(A), and 28 U.S.C. § 2631(k)(1).

4. Plaintiff requested and participated in the administrative proceedings that are the subject of this appeal and accordingly has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS

5. On August 26, 2014, Plaintiff initiated this action by the filing of a Summons within 30 days after release of the Scope Ruling to Plaintiff on August 4, 2014 in accordance with section 516A(a)(2)(A)(ii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(ii).

6. Plaintiff has also filed this Complaint within 30 days of the filing of the Summons, consistent with the time specified in section 516A(a)(2)(A) of the Act, 19 U.S.C. § 1516a(a)(2)(A) and 28 U.S.C. § 2636(c), and pursuant to Rules 3(a)(2) and 6(a) of this Court.

**FACTUAL BACKGROUND**

7.     On March 31, 2010, the Aluminum Extrusions Fair Trade Committee and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively "Petitioners") filed a petition with the Department and the United States International Trade Commission ("ITC") alleging that an industry in the United States was materially injured or threatened with material injury by reason of less than fair value and subsidized imports of certain aluminum extrusions from the PRC.

8.     On April 27, 2010, the Department initiated an antidumping duty investigation to determine whether certain aluminum extrusions from the PRC were being, or were likely to be, sold in the United States at less than fair value. *Aluminum Extrusions from the People's Republic of China: Initiation of Antidumping Duty Investigation*, 75 Fed. Reg. 22,109 (Apr. 27, 2010). That same day, the Department also initiated a countervailing duty investigation to determine whether certain aluminum extrusions from the PRC received countervailable subsidies. *Aluminum Extrusions from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 75 Fed. Reg. 22,114 (Apr. 27, 2010).

9.     In its notices of initiation of the antidumping duty investigation and of the countervailing duty investigation, the Department stated that the scope of both of the investigations on aluminum extrusions from the PRC excluded the following articles:

> <u>finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors</u>, picture frames, and solar panels. The scope also excludes <u>finished goods containing aluminum extrusions that are entered unassembled in a 'kit</u>.' A kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good.

75 Fed. Reg. 22,109, 22,114; 75 Fed. Reg. 22,114, 22,118 (emphasis added).

3

10. In June 2010, the ITC found that there was a reasonable indication that imports of certain aluminum extrusions from the PRC were materially injuring, or threatening material injury to, a U.S. industry. *See* Certain Aluminum Extrusions From China, Inv. Nos. 701-TA-475 and 731-TA-1177, USITC Pub. 4153 (June 2010) (Preliminary).

11. On April 4, 2011, the Department published notice of its final determination that certain aluminum extrusions from the PRC were being, or were likely to be, sold in the United States at less than fair value. *Aluminum Extrusions From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 18,524 (Apr. 4, 2011). On the same day, the Department also published notice of its final affirmative countervailing duty determination regarding certain aluminum extrusions from the PRC. *Aluminum Extrusions from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 76 Fed. Reg. 18,521 (Apr. 4, 2011).

12. In May 2011, the ITC notified the Department of its final determination that imports of certain aluminum extrusions from the PRC were materially injuring a United States industry. *See* Certain Aluminum Extrusions from China, Inv. Nos. 701-TA-475 and 731-TA-1177, USITC Pub. 4229 (May 2011) (Final).

13. On May 26, 2011, the Department issued antidumping and countervailing duty orders regarding certain aluminum extrusions from the PRC. *Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (May 26, 2011) ("Antidumping Duty Order"), *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (May 26, 2011) ("Countervailing Duty Order").

14. The Antidumping Duty Order and the Countervailing Duty Order both contain the following description of merchandise expressly excluded from the scope of these Orders:

> The scope also excludes certain finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.' A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further processing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product. An imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.

76 Fed. Reg. 30,650, 30,651; 76 Fed. Reg. 30,653, 30,654 (emphasis added).

15. On December 20, 2013, Plaintiff requested that the Department determine that certain completed kitchen appliance door handles with plastic end caps ("appliance handles with end caps") were outside the scope of the Antidumping Duty Order and Countervailing Duty Order. *See* Letter from Donald Harrison, Gibson, Dunn & Crutcher LLP, to the Secretary of Commerce re *Aluminum Extrusions from The People's Republic of China: Request for Scope Inquiry Regarding Kitchen Appliance Door Handles With End Caps Imported by Whirlpool Corporation* (Dec. 20, 2013) ("Handles With End Caps Scope Ruling Request").

16. On January 8, 2014, Plaintiff requested that the Department determine that certain completed kitchen appliance door handles without plastic end caps ("appliance handles without end caps") were outside the scope of the Antidumping Duty Order and Countervailing Duty Order. *See* Letter from Donald Harrison, Gibson, Dunn & Crutcher LLP, to the Secretary of Commerce re *Aluminum Extrusions from The People's Republic of China: Request for Scope Inquiry Regarding Kitchen Appliance Door Handles Without End Caps Imported by Whirlpool*

*Corporation* (Jan. 8, 2014) ("Handles Without End Caps Scope Ruling Request", collectively with Handles With End Caps Scope Ruling Request, "Scope Ruling Requests").

17. Appliance handles with end caps consist of alloy 6 series aluminum extrusions and nonaluminum components that are permanently assembled together, are fully complete and finished, and are ready for use as appliance door handles at the time of import. Thus, these appliance handles with end caps are ready to be attached to the kitchen appliance doors in their as-imported condition. No further processing or finishing of these handles is necessary prior to fulfilling their intended use.

18. Appliance handles without end caps consist of alloy 6 series aluminum extrusions that are fully fabricated, completed, and finished, and which are ready for use as appliance door handles at the time of import. Thus, these appliance handles without end caps are ready to be assembled to the kitchen appliance doors in their as-imported condition. No further processing or finishing of these handles is necessary prior to fulfilling their intended use.

19. In both of its Scope Ruling Requests, Plaintiff provided substantial evidence that its appliance handles with and without end caps are outside the scope of the Antidumping Duty Order and Countervailing Duty Order because they are "finished goods" that contain, at the time of importation, all of the necessary parts to fully assemble a final finished good and require no further finishing or fabrication, such as cutting or punching, and are assembled "as is" into a finished product. These Scope Ruling Requests further explained that exclusion of the appliance handles with and without end caps from the scope of the Antidumping and Countervailing Duty Orders was also consistent with the exclusion for "finished goods kits," and was also supported by numerous decisions by the Department, including but not limited to (a) the Department's March 20, 2013 scope determination involving boat and dock ladders, *see* Memorandum to

Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on Asia Sourcing Corporation's Boat and Dock Ladders and Strip Door Mounting Brackets," (Mar. 20, 2013) ("Boat Ladder Ruling"), (b) the Department's October 26, 2012 scope determination involving side mount valve controls, *see* Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on Side A Mount Valve Controls," (Oct. 26, 2012) ("SMVC Scope Ruling"), and (c) the Department's October 17, 2012 scope ruling involving aluminum anodes for water heaters, *see* the Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on Aluminum Anodes for Water Heaters," (Oct. 17, 2012) ("Anodes Scope Ruling").

20. On August 4, 2014, the Department issued its Final Scope Ruling regarding Plaintiff's appliance handles both with and without end caps. *See* Scope Ruling. The Department determined that Plaintiff's appliance handles with end caps and its appliance handles without end caps were both within the scope of the Antidumping Duty Order and Countervailing Duty Order, on the ground that "both of the handles at issue do not meet the exclusion criteria for finished goods kits or finished merchandise and, thus, are inside the scope of the *Orders*." *See* Scope Ruling at 21.

## STATEMENT OF CLAIMS

### Count One

21. Paragraphs 7 through 20 are adopted and incorporated herein by reference.

22. The Department's determinations in the Scope Ruling rely upon the erroneous conclusion that articles that include only extruded aluminum and "fasteners" cannot satisfy the requirements for exclusion as "finished merchandise," relying upon the Department's July 17,

2012 ruling involving geodesic domes. *See* Scope Ruling at 17, citing to Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, "Final Scope Ruling on J.A. Hancock, Inc.'s Geodesic Structures" (Jul. 17, 2012) ("Geodesic Domes Scope Ruling"). Thus, the Department stated that "we find that the handles at issue are comprised entirely of extruded aluminum and fasteners (i.e., plastic end caps)," and that "[t]herefore, we find the handles do not meet the Department's first test for determining whether a good constitutes a finished good or finished goods kit, as established in the Geodesic Domes Scope Ruling." *Id.* As is apparent from the language of the Antidumping and Countervailing Duty Orders quoted in paragraph 14 above, however, the language of the exclusion for "finished merchandise" contains no exception for articles that include "fasteners," and the exception for articles including "fasteners such as screws, bolts, etc." applies only to the "finished goods kit" exclusion. Further, the Department's decision in the Geodesic Domes Scope Ruling upon which the Department relied dealt expressly with this "finished goods kit" exclusion, and did not deal with the separate exclusion from the scope of the Antidumping and Countervailing Duty Orders for "finished merchandise."

23.    The Department's holding that the appliance handles with end caps do not qualify as "finished merchandise" because the handles "are comprised entirely of extruded aluminum and fasteners (*i.e.*, plastic end caps)" effectively changes the original scope of the orders through the interpretive process and thus renders the Department's determination contrary to law.

### Count Two

24.    Paragraphs 7 through 20 are adopted and incorporated herein by reference.

25.    The Department's determinations in the Scope Ruling rely upon the erroneous conclusion that the end caps assembled into the appliance handles with end caps constituted

"fasteners" as referenced in the exception from the exclusion for "finished goods kits." Thus, the Department stated that "we further determined that the end caps constitute 'fasteners' as referenced in the scope of the *Orders*." Scope Ruling at 18. As noted in the language from the Antidumping and Countervailing Duty Orders quoted in paragraph 14 above, this exception applies to "fasteners such as screws, bolts, etc." The end caps at issue are non-aluminum components analogous to the non-aluminum components in the Boat Ladders Ruling, and are not "fasteners such as screws, bolts, etc." as referenced in the "finished goods kit" exclusion.

26. The Department's characterization of the end caps as "fasteners" is erroneous as a factual and legal matter and this error renders the Department's determination unsupported by substantial evidence and contrary to law.

### Count Three

27. Paragraphs 7 through 20 are adopted and incorporated herein by reference.

28. The Department's determinations in the Scope Ruling rely upon an erroneous application of its decision in the SMVC Scope Ruling. In that ruling, the Department explained (at page 6) that it was "revising the manner in which it determines whether a given product is a "'finished good' or 'finished goods kit,'" explaining that its previous analysis "may lead to unreasonable results." In the context of the "finished goods kit" exception, the Department stated (at page 7) that in order to qualify for this exclusion the article "must be ready for installation and require no further finishing or fabrication." As noted in paragraphs 17 and 18 above, the appliance handles with and without end caps are "ready for installation and require no further finishing or fabrication" prior to their attachment to the kitchen appliance doors. Accordingly, the Department should have applied the analysis in the SMVC Scope Ruling to

9

determine that the appliance handles with and without end caps were excluded from the scope of the Antidumping and Countervailing Duty Orders.

29. The Department's refusal to apply the test articulated in the SMVC Scope Ruling to appliance handles with or without end caps renders the Department's determination contrary to law.

**Count Four**

30. Paragraphs 7 through 20 are adopted and incorporated herein by reference.

31. The Department's determinations in the Scope Ruling rely upon the erroneous conclusion that the appliance handles with end caps are not analogous to the "finished window with glass" and the "doors with glass or vinyl" that are among the types of articles expressly included within the exclusion for "finished merchandise" in the Antidumping and Countervailing Duty Orders. Thus, the Department's Scope Ruling states that "Whirlpool's products are not analogous to windows with glass because they consist only of aluminum extrusions and fasteners." Scope Ruling at 19. As with the examples included in the articles expressly excluded from the Antidumping and Countervailing Duty Orders, however, the appliance handles with end caps consist of aluminum extrusions assembled with non-aluminum components, are imported for use in assembly to a larger unit (the house or other structure in the case of the windows or doors and the appliance in the case of the appliance handles), and are useful only as they serve to help complete the larger unit. Accordingly, the Department should have relied upon these references in the Antidumping and Countervailing Duty Orders to determine that the appliance handles with end caps were excluded from the scope of the Antidumping and Countervailing Duty Orders.

32. The Department's conclusion that appliance handles with end caps are not analogous to the examples of excluded "finished merchandise," as identified in the Antidumping and Countervailing Duty Orders, is unsupported by substantial evidence and contrary to law.

### Count Five

33. Paragraphs 7 through 20 are adopted and incorporated herein by reference.

34. The Department's determinations in the Scope Ruling rely upon the erroneous conclusion that the handles with end caps do not satisfy the express requirements for the "finished merchandise" exclusion. As noted in the language in the Antidumping and Countervailing Duty Orders quoted in paragraph 14 above, the exclusion for "finished merchandise" requires that the merchandise "contain[] aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry." The handles with end caps satisfy each of these requirements, since they "contain[] aluminum extrusions as parts," they are "fully and permanently assembled" at the time of entry, and they are fully "completed" at the time of entry. Accordingly, the Department should have concluded that the handles with end caps meet the express requirements for exclusion from the Antidumping and Countervailing Duty Orders as "finished merchandise."

35. The Department's conclusion, that the handles with end caps do not qualify for the "finished merchandise" exclusion and can only be analyzed within the "finished goods kits" exclusion because of the presence of the end caps, adds an additional test to the "finished merchandise" exclusion that effectively changes the scope of the order through the interpretive process, and thus results in a determination that is contrary to law.

### REQUEST FOR RELIEF

36. Wherefore, Plaintiff respectfully requests that the Court:

  (a)  enter judgment in its favor;

  (b)  declare with respect to the issues raised in this Complaint that the Scope Ruling is unsupported by substantial evidence and is otherwise not in accordance with law;

  (c)  remand this matter to the Department with instructions to issue determinations that Plaintiff's appliance handles with and without end caps are excluded from the scope of the Antidumping and Countervailing Duty Orders; and

  (d)  provide such other relief as the Court deems just and proper.

              Respectfully submitted,

               /s/Donald Harrison
              Donald Harrison
              J. Christopher Wood
              Ran Yan
              GIBSON, DUNN & CRUTCHER LLP
              1050 Connecticut Avenue, N.W.
              Washington, D.C.  20036-5306
              Telephone:  (202) 955-8500
              *Counsel to Whirlpool Corporation*

August 26, 2014