Slip Op. 16-8

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WHIRLPOOL CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES**,<br><br>Defendant,<br><br>and<br><br>**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**<br><br>Defendant-Intervenor. | **Before: Timothy C. Stanceu, Chief Judge**<br><br>**Court No. 14-00199** |

## <u>OPINION AND ORDER</u>

[Affirming in part, and remanding in part, a decision of the International Trade Administration, U.S. Department of Commerce, interpreting the scope of antidumping and countervailing duty orders]

Dated:February 1, 2016

*Donald Harrison*, Gibson, Dunn & Crutcher, LLP, of Washington, DC, for plaintiff.

*Aimee Lee*, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of New York, NY, for defendant.  With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director.  Of counsel on the brief was *David P. Lyons*, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Alan H. Price* and *Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, DC, for defendant-intervenor.

Stanceu, Chief Judge: Plaintiff Whirlpool Corporation ("Whirlpool") contests a 2014

decision (the "Final Scope Ruling") of the International Trade Administration, United States

Department of Commerce ("Commerce" or "the Department") interpreting the scope of

antidumping and countervailing duty orders (the "Orders") to include two types of kitchen

appliance door handles that Whirlpool imported.  The Orders apply to certain "aluminum

extrusions" from the People's Republic of China.

Before the court is Whirlpool's motion for judgment on the agency record, in which

Whirlpool argues that Commerce should have determined that both types of appliance door

handles are excluded from the scope of the Orders.  Defendant United States and

defendant-intervenor Aluminum Extrusions Fair Trade Committee ("AEFTC"), a trade

association of U.S. producers of aluminum extrusions and one of two petitioners in the

antidumping and countervailing duty investigations, oppose plaintiff's motion.  The court affirms

the Department's decision that one of the handle types is within the scope of the Orders.  As to

the other type, the court concludes that Commerce unreasonably interpreted the pertinent scope

language and sets aside the Department's decision, ordering a remand for redetermination.

## I. Background

Commerce issued the Orders in May 2011.  *Aluminum Extrusions from the People's*

*Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin.

May 26, 2011) ("*AD Order*"); *Aluminum Extrusions from the People's Republic of China:*

*Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD*

*Order*").

Plaintiff filed a request for a scope ruling on a type of appliance door handles (the

"assembled" handles) on December 20, 2013.  *Letter Requesting a Scope Ruling Regarding*

*Kitchen Appliance Door Handles With End Caps* 7 (First Admin.R.Doc. No. 1) ("*Assembled*

*Handle Request*").  Whirlpool filed a request regarding the other type of handles (the "one-piece"

handles) on January 8, 2014.  *Letter Requesting a Scope Ruling Regarding Kitchen Appliance*

*Door Handles Without End Caps* 4 (Second Admin.R.Doc. No. 1) ("*One-Piece Handle*

*Request*").  In both requests, Whirlpool described its merchandise as "certain fully complete and

finished kitchen appliance handles" for kitchen appliances such as refrigerators and dishwashers. *See Assembled Handle Request* at 1, 6-7; *One-Piece Handle Request* at 1, 3-4. Responding to a request from Commerce, Whirlpool supplemented both scope ruling requests on March 19, 2014. *See Resp. of Whirlpool Corp. to the Dep't's Supp. Questionnaire on Scope Ruling Regarding Kitchen Appliance Door Handles With End Caps* (First Admin.R.Doc. No. 7) ("*Assembled Handle Supp. Questionnaire Resp.*"); *Resp. of Whirlpool Corp. to the Dep't's Supp. Questionnaire on Scope Ruling Regarding Kitchen Appliance Door Handles Without End Caps* (Second Admin.R.Doc. No. 7) ("*One-Piece Handle Supp. Questionnaire Resp.*").

Commerce issued the Final Scope Ruling on August 4, 2014, in which it ruled that both types of appliance door handles are within the scope of the Orders. *Final Scope Ruling on Kitchen Appliance Door Handles*, A-570-967, C-570-968 (Aug. 4, 2014) (Admin.R.Doc. No. 11) *available at* http://enforcement.trade.gov/download/prc-ae/scope/46-kitchen-door-handles-4aug14.pdf (last visited Jan. 29, 2016) ("*Final Scope Ruling*").

Whirlpool commenced this action by filing a summons and complaint on August 26, 2014. Summons, ECF No. 1; Compl., ECF No. 6. On February 23, 2015, Whirlpool filed its motion for judgment on the agency record. Pl.'s Mot. J. Agency R., ECF No. 26 ("Pl.'s Br."). Defendant and defendant-intervenor responded on June 2, 2015. Def.'s Opp'n to Pl.'s Mot. J. Agency R., ECF No. 36 ("Def.'s Opp'n"); Def.-Int.'s Resp. Pl.'s Mot. J. Agency R., ECF No. 35 ("Def.-Int.'s Opp'n"). On July 13, 2015, Whirlpool filed a reply. Pl.'s Reply Br. to Def.'s Opp'n to Pl.'s Mot. J. Agency R., ECF No. 42. The court held an oral argument on October 8, 2015. ECF No. 47.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[1]  Among the decisions that may be contested in this Court under Section 516A is a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order."  19 U.S.C. § 1516a(a)(2)(B)(vi).  In reviewing the contested scope ruling, the court must set aside "any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  *Id*. § 1516a(b)(1)(B)(i).

### B.  Description of the Merchandise in Whirlpool's Scope Ruling Requests

Each of Whirlpool's two scope ruling requests involves a different basic type of kitchen appliance door handle.  Each handle, of either type, is imported in a form ready for installation on an appliance.  *Assembled Handle Request* 1-2; *One-Piece Handle Request* 5.

### 1.  The Assembled Kitchen Appliance Door Handles as Described in Whirlpool's First Scope Ruling Request

The goods described in the first scope ruling request are 38 models of assembled kitchen appliance door handles, 32 of which are made for specific models of refrigerators, four are made for specific ranges, one is made for a dishwasher, and one is made for an electric oven.  *Assembled Handle Request* Attach. 1.  The record indicates some variation in the assemblies, but a fact common to all models is that each handle has within the assembly a single component that

---

[1] All statutory citations herein are to the 2012 edition of the United States Code and all regulatory citations herein are to the 2013 edition of the Code of Federal Regulations.

is fabricated from an aluminum extrusion and then surface coated (by, for example, brushing,

anodizing, or painting).  Also common to each handle in Whirlpool's first scope ruling request is

the presence of plastic end caps that are attached to the aluminum component by screws.  *Id.*

at 7, 16-17.  In its scope ruling request and supplemental questionnaire response, Whirlpool

described and illustrated, as an example, a refrigerator door handle identified in the record as part

number W10223019.  This handle was produced by machining an aluminum extrusion "to

precise specifications so that it conforms to the requirements for the refrigerator model involved,

brushing of the aluminum extrusion, bending of the extrusion to shape, anodizing the product for

appearance and durability, and assembly of the aluminum extrusion with non-aluminum plastic

end caps by means of screws attaching the end caps to the extrusion."  *Id.* at 7.  All models of

handles in Whirlpool's first scope ruling request undergo "detailed and specific processing and

finishing operations prior to importation."  *Id.*  As imported into the United States, all assembled

handles covered by this request "are fully manufactured, assembled and completed, with no

further processing of the handle required."  *Id*.

   2.  The One-Piece Kitchen Appliance Door Handles as Described in Whirlpool's Second Scope
                                    Ruling Request

        Whirlpool's second scope ruling request described 78 models of appliance door handles,

each of which consists of a single extruded aluminum component rather than an assembly.  *See*

*One-Piece Handle Request* 4, Attach. 1.  Fifty-one of these handles are made for refrigerators,

13 are for dishwashers, two are for microwaves, nine are for ranges, and three are for trash

compactors.  *Id.* at Attach. 1.  These handles are produced by extrusion, machining and bending

to the specific requirements of the kitchen appliance, and treating of the surface (by brushing,

anodizing, or painting).  *Id*. at 4.  Whirlpool's scope ruling request provides further detail

regarding a one-piece dishwasher handle, listed as part number W10195738, which contains a

"drilled hole at each end where screws are inserted to join the handle" to the dishwasher and is

imported with an Allen wrench and two stainless steel set screws for use in installing the handle

to the appliance.  *Id.* at 3-4 & n.5; *see One-Piece Handle Questionnaire Resp.* 1.  Handle number

W10195738 and the remaining other one-piece handles are imported in a form ready for

attachment to an appliance door.  *One-Piece Handle Request* 5.

C.  The Scope Language in the Orders

The scope language of the antidumping duty order and the scope language of the

countervailing duty order are essentially identical.  The Orders apply to "aluminum extrusions

which are shapes and forms, produced by an extrusion process, made from aluminum alloys

having metallic elements corresponding to the alloy series designations published by The

Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or

other certifying body equivalents)."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD Order*, 76 Fed.

Reg. at 30,653.

The scope of the Orders includes goods made of the specified aluminum alloys that

resulted from an extrusion process but also were subjected to certain specified types of industrial

processes after extrusion.  These post-extrusion processes are drawing, fabricating, and finishing;

the scope language provides non-exhaustive lists of types of fabricating and finishing operations.

For finishing, the good, for example, may be "brushed, buffed, polished, anodized (including

bright-dip anodized), liquid painted, or powder coated."  *AD Order*, 76 Fed. Reg. at 30,650; *CVD*

*Order*, 76 Fed. Reg. at 30,654.  For fabricating, the Orders include a good that is, for example,

"cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered,

chamfered, threaded, and spun."  *Id*.  The scope includes these aluminum extrusions even if they

are "described at the time of importation as parts for final finished products that are assembled

after importation" or "identified with reference to their end use."  *AD Order*, 76 Fed. Reg.

at 30,650-51; *CVD Order*, 76 Fed. Reg. at 30,654.

The scope language contains an exclusion from the scope that applies to certain "finished

merchandise," which reads as follows:

> The scope . . . excludes finished merchandise containing aluminum
> extrusions as parts that are fully and permanently assembled and completed at the
> time of entry, such as finished windows with glass, doors with glass or vinyl,
> picture frames with glass pane and backing material, and solar panels.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  The scope language also

provides for an exclusion from the scope for "finished good kits," as follows:

> The scope also excludes finished goods containing aluminum extrusions that are
> entered unassembled in a "finished goods kit."  A finished goods kit is understood
> to mean a packaged combination of parts that contains, at the time of importation,
> all of the necessary parts to fully assemble a final finished good and requires no
> further finishing or fabrication, such as cutting or punching, and is assembled "as
> is" into a finished product.  An imported product will not be considered a
> "finished goods kit" and therefore excluded from the scope of the investigation
> merely by including fasteners such as screws, bolts, *etc*. in the packaging with an
> aluminum extrusion product.

*Id*.

### D.  Commerce Misinterpreted the Scope Language in Determining that the Assembled Handles Are Within the Scope of the Orders

As the Court of Appeals for the Federal Circuit (the "Federal Circuit") has instructed in a

leading case, "[s]cope orders may be interpreted as including subject merchandise only if they

contain language that specifically includes the subject merchandise or may be reasonably

interpreted to include it."  *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir.

2002) ("*Duferco*").  In this case, the scope language of the Orders consists of general scope

language and a number of express exclusions from that general scope language.  To determine

that merchandise is within the scope of the Orders, Commerce first must determine that the

general scope language is reasonably interpreted to include the merchandise.  If so, Commerce

then must determine whether it is reasonable to interpret the scope language such that no specific

exclusion applies.  In placing the assembled handles within the scope, Commerce erred by

misinterpreting both the general scope language and the language of the finished merchandise

exclusion.

> 1.  The Department's Determination that the Assembled Handles Are Within the Scope Was
> Based on an Unreasonable Interpretation of the General Scope Language

Each appliance door handle in the first scope ruling request is an assembly consisting of

an aluminum alloy component, plastic end caps, screws, and in some cases other components,

depending on the model of assembled handle.  *Assembled Handle Request* 7, 16-17.  Commerce

found, and Whirlpool does not contest, that the aluminum component is a product of an extrusion

process performed upon an aluminum alloy covered by the scope language.  *See Final Scope

Ruling* 5.  Also, there can be no dispute that the machining, bending, and surface treatments

performed on the extrusion component prior to assembly are contemplated by the scope language

as types of post-extrusion processes that do not remove an article from the scope.  The issue,

therefore, is whether the general scope language reasonably may be interpreted to include these

handles even though the handles are assemblies containing an extrusion and various other parts

and even though they are imported in a fully-assembled form, ready for use.

The general scope language provides that the Orders apply to "aluminum extrusions

which are shapes and forms, produced by an extrusion process . . . ."  *AD Order*, 76 Fed. Reg.

at 30,650; *CVD Order*, 76 Fed. Reg. at 30,653.  The handles at issue are not themselves

"extrusions" but rather are assemblies, each of which contains an extrusion, machined and

surface-treated, as the principal component.  Moreover, it is not consistent with the record facts

to conclude that the assembled article is "produced by an extrusion process" when only one

component of the assembly was extruded and the good, in the form in which it is imported, is the result of an assembly, not an extrusion, process.

It is noteworthy that the general scope language provides that a good resulting from an extrusion process performed upon a covered aluminum alloy remains in the scope even though it has been subjected to one of three specified types of post-extrusion processes, namely, drawing, fabricating, and finishing.  Notably absent from the identified post-extrusion processes are assembly processes.  It is not reasonable to interpret the scope language to place within the Orders, as a general matter, *any* assembled good containing an aluminum extrusion, as defined therein.  In other words, the Orders apply to "extrusions," which is a term broadly defined by the Orders to include goods that have been processed in various ways following an extrusion process, but the term "extrusion" is not defined in the general scope language so as to include a good simply because an extruded aluminum component is present within a good consisting of an assembly.

The scope language further states that the scope of the Orders includes aluminum extrusions that are "described at the time of importation as parts for final finished products that are assembled after importation" or "identified with reference to their end use," *AD Order*, 76 Fed. Reg. at 30,650-51; *CVD Order*, 76 Fed. Reg. at 30,654, but this sentence does not expand the scope beyond "extrusions" as defined elsewhere in the general scope language, as is made clear by the following sentence: "Such parts that *otherwise meet the definition of aluminum extrusions* are included in the scope." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (emphasis added).  The following sentence in the general scope language places within the scope "aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of

the finished goods 'kit' defined further below." *Id.* This is the only general scope language that

reasonably can be interpreted to expand the scope beyond goods consisting solely of a single

extrusion, but this sentence, notably, refers to "partially assembled merchandise."

In the Final Scope Ruling, Commerce failed to address in any meaningful way the

question of whether the general scope language describes the assembled handles. The discussion

of the assembled handles in the analysis portion of the Final Scope Ruling begins by mentioning

the definition of "extrusion" in the general scope language, *Final Scope Ruling* 17, but the

analysis proceeds directly to a discussion of whether these goods satisfy either the finished

merchandise exclusion or the finished goods kit exclusion, *id.* After a discussion of the two

exclusions, the Final Scope Ruling states, in conclusory fashion, that "we find that the handles at

issue fall inside the language of the scope that includes 'aluminum extrusions which are shapes

and forms, produced by an extrusion process.'" *Id.* at 18.

In placing the assembled handles within the scope, Commerce did not rely on the

"subassemblies" provision in the general scope language that the court mentioned above. This is

understandable, as the provision expressly applies to "partially assembled merchandise." The

uncontradicted record evidence is that the assembled handles are imported in a form in which

they require no further assembly or processing prior to the intended use. *See id.* at 5 (in which

Commerce found, with respect to assembled handles for refrigerator doors, that these handles

"are ready for attachment to the refrigerator door upon importation"). Instead, Commerce relied

upon one of its own prior scope rulings, to which it refers as the "Geodesic Domes Scope

Ruling." *Id.* at 6 & n.21 (citing "'Final Scope Ruling on J.A. Hancock, Inc.'s Geodesic

Structures,' (July 17, 2012)" ("*Geodesic Domes Scope Ruling*")). Whether this ruling is correct

or not, it cannot serve as a basis to place a good within an order when the scope language of that

order may not reasonably be interpreted to include the good.[2]  *See Duferco*, 296 F.3d at 1089.

Commerce also relied on a previous scope ruling, "Final Scope Ruling on Meridian Kitchen

Appliance Door Handles," dated June 21, 2013.  *Final Scope Ruling* 18-19.  The Court of

International Trade rejected that ruling to the extent that it placed an assembled appliance door

handle within the scope of the Orders, for reasons analogous to those the court states herein.

*Meridian Products, LLC v. United States*, 38 CIT __, Slip Op. 15-135 (Dec. 7, 2015).  *Meridian*

*Products*, like this case, involved appliance door handles consisting of assemblies containing

plastic end caps as well as an aluminum extrusion.  In placing Whirlpool's assembled handles

within the scope, Commerce relied on past rulings, citing its regulation, 19 C.F.R.

§ 351.225(k)(1).  *Final Scope Ruling* 16.  This reliance is misplaced.  Past rulings and reliance

upon § 351.225(k)(1) cannot save a scope determination that is based on an unreasonable

interpretation of the scope language.  *See Duferco*, 296 F.3d at 1097 (instructing that

§ 351.225(k)(1) sources "cannot substitute for language in the order itself").

 In summary, because the general scope language is not reasonably interpreted to include

the kitchen appliance door handles described in Whirlpool's first scope ruling request, the

Department's ruling that these assembled handles are within the scope of the Orders is contrary

to law and must be set aside.

<u>2.  Commerce Erroneously Determined that the Assembled Handles Do Not Qualify for
the Finished Merchandise Exclusion in the Scope Language</u>

 Even were the court to presume, *arguendo*, that Whirlpool's assembled handles are

described by the general scope language, it still could not affirm the Department's decision that

the assembled handles are within the scope of the Orders.  Commerce concluded that these

---

[2] As discussed later in this Opinion and Order, the ruling upon which Commerce relies is not relevant to the question posed by the assembled handles.

handles do not qualify for the finished merchandise exclusion, which applies to "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry . . . ." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Commerce presents no convincing reason why the plain language of this exclusion, which appears to describe the assembled handles, would not be dispositive were the general scope language presumed to describe these goods.

Commerce again relied upon its Geodesic Domes Scope Ruling, which Commerce described as involving a children's jungle gym that was comprised of extruded aluminum poles accompanied by nuts, bolts, and washers.  *Final Scope Ruling* 18 (citing *Geodesic Domes Scope Ruling* 5, 7).  Commerce concluded that the good, which was in disassembled form when imported, did not qualify for the finished goods kit exclusion because it consisted entirely of aluminum extrusions and fasteners.  *Id*.  Commerce noted that "the exception to the exclusion provision applied," *id.* at 18, referring to the scope language providing that "[a]n imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product."  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  Because Whirlpool's assembled door handles are not imported in disassembled form, the finished goods kit exclusion is inapplicable; the Geodesic Domes Scope Ruling is, therefore, not on point.

In setting forth the finished merchandise exclusion in the scope language of the Orders, Commerce made no mention of an exception for fasteners.  In the Final Scope Ruling, Commerce appears to have presumed that the exception for fasteners in the finished goods kit exclusion applies to the finished merchandise exclusion as well.  In support of this presumption,

which is at odds with established principles of construction, Commerce illogically relies upon the

inapposite Geodesic Domes Scope Ruling. *Final Scope Ruling* 17-18.  Commerce states that

"we find unconvincing the notion that an unassembled product in kit-form that consists solely of

extruded aluminum, save for fasteners, would, per the analysis from the Geodesic Domes Scope

Ruling, fall inside the scope while the identical product, entering the United States as an

assembled good, would fall outside the scope of the *Orders*."  *Id.* at 20.  But this reasoning begs

the question of why Commerce, if it actually had intended to sweep into the scope any assembled

good consisting solely of aluminum extrusion components and fasteners, did not so provide in

the scope language.  Instead, Commerce expressly confined its "fasteners" exception to the

finished goods kit exclusion.  Commerce also reasons that "determining that a product which

consists only of aluminum extrusions and fasteners satisfies the finished good [*sic*] exclusion

would permit this exclusion to the Orders to swallow the scope, because any aluminum extrusion

product, as long as it can be identified by end use, could be considered a finished product,"

adding that "[t]his is contrary to the scope itself, which covers aluminum extrusions." *Id.*  This

line of reasoning is flawed in overlooking the point that the finished merchandise exclusion

applies only to assemblies.

Commerce also employed flawed logic and ignored record evidence in concluding that

the plastic end caps in the assembled handles are "fasteners."  The Final Scope Ruling reasons

that "[c]onsistent with the Department's approach in such prior rulings as the Geodesic Domes

Scope Ruling, we find the end caps are analogous to washers, and, therefore, we further

determine that the end caps constitute 'fasteners' as referenced in the scope of the *Orders*."  *Id.*

at 18.  Relying on a dictionary definition of "washer" as a "flat thin ring or a perforated plate

used in joints or assemblies to ensure tightness, prevent leakage, or relieve friction," *id.* at 17

(citing an online *Merriam Webster* dictionary), Commerce found that the plastic end caps "are analogous to a washer" because they "allow[ ] the handle to fit tightly to the refrigerator door"; Commerce further found, without evidentiary support in the record, that the plastic end caps "relieve[ ] friction between the door and the handle." *Id.* The record evidence is that the end caps are made of plastic, are designed for their specific application, and are attached to the aluminum extrusion component "by means of screws." *Assembled Handle Request* 7, 16-17. Thus, they are not "washers" of the type commonly used with bolts and screws and do not conform to the definition of "washer" Commerce cited, which perhaps is the reason Commerce found an end cap to be merely "analogous" to a washer. As defendant acknowledges, "Commerce did not make any finding that the end caps met a physical description of a washer"; defendant submits instead that "Commerce supplied a cogent explanation linking plastic end caps to the functions that define washers." Def.'s Opp'n 20. In summary, the plastic end caps are not "fasteners" within any common or ordinary definition of that term (including the definition of "washer" relied upon by Commerce), and even if they were presumed to be such, the scope language of the Orders could not reasonably be interpreted to include the assembled kitchen appliance door handles at issue in this case.

### 3. On Remand, Commerce Must Reconsider Its Decision that the Assembled Handles Are Within the Scope of the Orders

The Department's decision that the assembled handles are within the scope of the Orders is not supported by the plain meaning of the general scope language and the finished merchandise exclusion. On remand, Commerce must reach a new determination as to whether the assembled handles are covered by the scope, bearing in mind that it must interpret reasonably the scope language it chose upon promulgating the Orders. *See Duferco*, 296 F.3d at 1097-98.

Defendant offers several arguments in advocating that the court affirm, rather than remand, the Department's decision as to the assembled handles.  These arguments rely on the same misinterpretations of the scope language and the same flawed logic that affect the Final Scope Ruling, and the court therefore rejects them.

Defendant-intervenor makes some of the same arguments that defendant does, but it also offers some additional points for the court's consideration.  Defendant-intervenor suggests, for example, that the handles are "partially assembled merchandise" that fall within the subassemblies provision.  Def.-Int.'s Opp'n 3.  This argument is unavailing because it rests upon a rationale differing from that upon which Commerce based its decision.  Moreover, this argument ignores the record fact that the handles are imported in fully assembled form.

Similarly, defendant-intervenor argues that Whirlpool's handles are not "final finished goods" and therefore cannot satisfy the finished merchandise exclusion.  *Id.* at 10-12.  This, too, is a rationale differing from the Department's.  Moreover, the argument rests on a misinterpretation of the language of the finished merchandise exclusion, which, unlike the language of the finished goods kit exclusion, does not use the term "final finished good."

Defendant-intervenor argues, additionally, that the Department's decision accords with the reasoning in *Shenyang Yuanda Aluminum Industry Engineering Co. v. United States*, 38 CIT __, 961 F. Supp. 2d 1291 (2014), *aff'd*, 776 F.3d 1351 (Fed. Cir. 2015).  *Id.* at 13-14.  Commerce rejected this argument in the Final Scope Ruling, concluding that the case is not controlling on the facts presented.  *Final Scope Ruling* 15.  The court agrees with Commerce that *Yuanda* is inapposite.  *Yuanda* involved a curtain wall unit, not a product analogous to the assembled handles.

    E.  The Court Affirms the Department's Determination that the One-Piece Handles Are
Within the Scope of the Orders

The Court of Appeals has instructed that "just as orders cannot be extended to *include*
merchandise that is not with the scope of the order as reasonably interpreted, merchandise
facially covered by an order may not be *excluded* from the scope of the order unless the order
can reasonably be interpreted so as to exclude it."  *Mid Continent Nail Corp. v. United States*,
725 F.3d 1295, 1301 (Fed. Cir. 2013).  The one-piece handles presented in Whirlpool's second
scope ruling request are described by the general scope language of the Orders.  They consist of
a single aluminum extrusion made from a covered alloy.  They have been subjected to
fabrication and surface treatments following the extrusion process, but under the scope language
such processes do not remove an extrusion from the scope of the Orders.  Plaintiff makes no
argument to the contrary.

The exclusions to the scope of the Orders are inapplicable to the one-piece handles.  The
finished merchandise exclusion does not apply because it is limited to assemblies.  *AD Order*,
76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654 (applying the exclusion to "finished
merchandise containing aluminum extrusions as parts that are fully and permanently assembled
and completed at the time of entry").  The one-piece handles do not contain extrusions as parts
and are not assemblies.  *See One-Piece Handle Request* at 4.  Moreover, the finished goods kit
exclusion cannot apply to the one-piece handles because it is limited to goods that are
unassembled.  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.  The one-
piece handles are imported as one-piece, finished articles, not as kits containing unassembled
components.  *One-Piece Handle Request* 1.

Plaintiff admits that it "is not possible reasonably to rely upon the express language in the
'finished merchandise' provision with respect to these appliance handles, since they consist of a

single aluminum extrusion."  Pl.'s Br. 34.  Whirlpool nonetheless contends that the one-piece

handle should be excluded from the scope of the Orders under this exclusion because it is

"finished merchandise" that is "included within the common meaning of this term, as established

in dictionary definitions, accounting texts and government publications."  *Id*. at 34-35.  This

argument is misguided in disregarding the actual scope language, which must control.

Whirlpool next analogizes its one-piece handles to certain aluminum extrusion straight

edges that were at issue in *Plasticoid Mfg. Inc. v. United States*, 38 CIT __, 28 F. Supp. 3d 1352

(2014).  Pl.'s Br. 36-37.  Whirlpool may not rely on this case to support its claim that the one-

piece handles fall outside the scope; *Plasticoid* was not a final decision and instead remanded the

Department's decision that the merchandise was within the scope of the Orders "for further

consideration."  *Plasticoid Mfg. Inc.*, 38 CIT at __, 28 F. Supp. 3d at 1373.  Moreover, after the

*Plasticoid* opinion and order was issued, the case was dismissed for failure to prosecute.

*Plasticoid Mfg. Inc. v. United States*, 39 CIT __, Slip Op. 15-30 (Apr. 3, 2015).

Whirlpool also compares its one-piece handles to aluminum inlet parts for automotive

heating and cooling systems found to meet the finished merchandise exclusion in *Final Results*

*of Redetermination Pursuant to Court Remand: Aluminum Extrusions from the People's*

*Republic of China Valeo, Inc.*, (Int'l Trade Admin. Feb. 13, 2013) ("*Valeo Redetermination*"),

*aff'd Valeo, Inc. v. United States* (Ct. No. 12-00381) (May 14, 2013).  Pl.'s Br. 36-37.  This case,

too, fails to support Whirlpool's argument.  The *Valeo Redetermination* analyzed finished goods

that were assemblies.  *See Final Scope Ruling on Valeo's Automotive Heating and Cooling*

*Systems*, A-570-967, C-570-968, at 11 (Oct. 31, 2012), *available at*

http://enforcement.trade.gov/download/prc-ae/scope/20-Valeo-Automotive-Heating-Cooling-

Systems-20121031.pdf (last visited Jan. 29, 2016).

### III. Conclusion and Order

For the reasons discussed in the foregoing, the court affirms the Department's determination in the Final Scope Ruling as to the one-piece handles at issue in this case. The court further concludes, for the reasons discussed in the foregoing, that the Department's determination placing the assembled handles within the scope of the Orders is unlawful and must be set aside.

Therefore, upon consideration of the Final Scope Ruling and all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that the Final Scope Ruling of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"), is affirmed in its determination that Whirlpool's one-piece kitchen appliance door handles are within the scope of the Orders; it is further

**ORDERED** that the Final Scope Ruling be, and hereby is, remanded for reconsideration, in accordance with this Opinion and Order, of the Department's determination that plaintiff's assembled kitchen appliance door handles are within the scope of the Orders; it is further

**ORDERED** that Commerce shall have sixty (60) days from the date of this Opinion and Order to file a remand redetermination comprising a new scope ruling on the assembled handles that complies with this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenor shall have thirty (30) days from the date of the Department's filing of the remand redetermination in which to file comments on the remand redetermination; and it is further

**ORDERED** that defendant shall have fifteen (15) days after the filing of the last comment by plaintiff or defendant-intervenor in which to file a reply to the comments of the other parties.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated:  February 1, 2016
        New York, New York