Slip Op. 19-6

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **WHIRLPOOL CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**<br><br>Defendant-Intervenor. | **Before: Timothy C. Stanceu, Chief Judge**<br><br>**Court No. 14-00199** |

## OPINION AND ORDER

[Ordering further administrative proceedings in compliance with a mandate of the United States Court of Appeals for the Federal Circuit]

Dated: January 14, 2019

*Donald Harrison*, Gibson, Dunn & Crutcher, LLP, of Washington, D.C., for plaintiff.

*Aimee Lee*, Senior Trial Counsel, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel was *Jessica M. Link*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Alan H. Price* and *Robert E. DeFrancesco, III*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor.

Stanceu, Chief Judge: This litigation arose from a challenge to a decision (the "Final

Scope Ruling") of the International Trade Administration, U.S. Department of Commerce

("Commerce" or the "Department") interpreting the scope of an antidumping duty order and a

countervailing duty order on certain aluminum extrusions from the People's Republic of China

("China").

Before the court is the mandate issued by the United States Court of Appeals for the

Federal Circuit ("Court of Appeals") in *Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed.

Cir. 2018) ("*Whirlpool III*").  CAFC Mandate in Appeal # 17-1117 (Sept. 12, 2018), ECF

No. 70.  *Whirlpool III* affirmed in part, reversed in part, and vacated in part the judgment in

*Whirlpool Corp. v. United States*, 40 CIT __, 182 F. Supp. 3d 1307 (2016) ("*Whirlpool II*").

*Whirlpool III*, 890 F.3d at 1311-12.  This Opinion and Order instructs Commerce regarding

further administrative proceedings, as directed by the Court of Appeals.

## I. BACKGROUND

Background on this litigation is described in the court's prior opinions and is summarized

briefly herein.  *See Whirlpool Corp. v. United States*, 40 CIT __, __, 144 F. Supp. 3d 1296,

1298-99 (2016) ("*Whirlpool I*"); *Whirlpool II*, 40 CIT at __, 182 F. Supp. 3d at 1308-09;

*Whirlpool III*, 890 F.3d at 1305-07.

Plaintiff Whirlpool Corporation ("Whirlpool") commenced this litigation in 2014 to

contest the Final Scope Ruling, in which Commerce construed the scope of antidumping and

countervailing duty orders (the "Orders")[1] on aluminum extrusions from China to include two

types of Whirlpool's imported door handles for kitchen appliances: "assembled" handles and

"one-piece" handles.  *See Final Scope Ruling on Kitchen Appliance Door Handles*, A-570-967,

C-570-968 (Aug. 4, 2014) (Admin. R. Doc. No. 11), ECF No. 20-1 ("*Final Scope Ruling*").  In

---

[1] The scope language in both Orders is essentially the same.  *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Int'l Trade Admin. May 26, 2011) ("*AD Order*"); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Int'l Trade Admin. May 26, 2011) ("*CVD Order*").

*Whirlpool I*, the court sustained the Department's determination that the one-piece handles, each of which is fabricated from a single aluminum extrusion, were within the scope of the Orders and remanded to Commerce the Department's decision placing within the scope the other type of handles, which are five-piece assemblies consisting of a component fabricated from an aluminum extrusion and two plastic end caps fastened to the aluminum component with two screws.  *Whirlpool I*, 40 CIT at __, 144 F. Supp. 3d at 1301-08.  Only the assembled appliance door handles remain at issue in this litigation.

Commerce issued a determination in response to *Whirlpool I* (the "Remand Redetermination") that, under protest, placed the assembled appliance door handles outside the scope of the Orders, a decision the court sustained in *Whirlpool II*.  *Results of Redetermination Pursuant to Court Remand* (Apr. 15, 2016) (Remand Admin. R. Doc. No. 3), ECF No. 51 ("*Remand Redetermination*").  On appeal, the Court of Appeals held that the court's decision in *Whirlpool I* erred in its interpretation of certain of the scope language of the Orders but upheld the decision in certain other respects.  *Whirlpool III*, 890 F.3d at 1309, 1311-12.  The Court of Appeals directed this Court to order Commerce to conduct further proceedings consistent with its opinion.

## II. DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2012), which grants this Court jurisdiction over civil actions brought under section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, *as amended* ("Tariff Act"), 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012).  In reviewing the contested scope ruling, the court must set aside "any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  *Id.* § 1516a(b)(1)(B)(i).

The assembled handles at issue in this case "are 38 models of assembled kitchen appliance door handles, 32 of which are made for specific models of refrigerators, four are made for specific ranges, one is made for a dishwasher, and one is made for an electric oven." *Whirlpool I*, 40 CIT at __, 144 F. Supp. 3d at 1299 (citing *Letter Requesting a Scope Ruling Regarding Kitchen Appliance Door Handles With End Caps* Attach. 1 (Dec. 20, 2013) (Admin. R. Doc. No. 1), ECF No. 38 ("*Assembled Handle Request*")). According to Whirlpool's scope ruling request for the assembled handles, each handle has within the assembly a single component that is fabricated from an aluminum extrusion. Also common to each handle in Whirlpool's scope ruling request is the presence of plastic end caps that are attached to the aluminum component by screws. *See Assembled Handle Request* 7, 16-17. According to the request, an "assembled handle," as imported, consists of an assembly of five components: a component fabricated from an aluminum extrusion, two plastic end caps, and two screws, each of which attaches an end cap to the aluminum component. *See id.* at 7, Attach. 1, Attach. 2. The request added that the assembled handles "are fully manufactured, assembled and completed, with no further processing of the handle required." *Id.* at 7. Citing this request, Commerce found in the Final Scope Ruling that:

> The handles at issue consist of alloy 6 series aluminum extrusions. The non-aluminum components consist of plastic end caps that are attached by metal screws to the handle and the surface of the kitchen appliance door. The handles are ready for attachment to the refrigerator door upon importation.

*Final Scope Ruling* 5 (footnote omitted).

*Whirlpool I* concluded that Commerce, in placing the assembled handles inside the scope, unreasonably construed the "general" scope language, i.e., the scope language apart from several specific exclusions. The court noted that the general scope language provides that the Orders apply to "aluminum extrusions which are shapes and forms, produced by an extrusion process."

*Whirlpool I*, 40 CIT at __, 144 F. Supp. 3d at 1302 (quoting *AD Order*, 76 Fed. Reg. at 30,650;

*CVD Order*, 76 Fed. Reg. at 30,653).  The court reasoned that "[i]t is not reasonable to interpret

the scope language to place within the Orders, as a general matter, *any* assembled good

containing an aluminum extrusion, as defined therein."  *Id.*  The court addressed a provision in

the scope language (the "subassemblies" provision) that places within the scope "aluminum

extrusion components that are attached (*e.g.*, by welding or fasteners) to form subassemblies, *i.e.*,

partially assembled merchandise unless imported as part of the finished goods 'kit' defined

further below."[2]  *Id.* (quoting *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg.

at 30,654).  Under the subassemblies provision, an assembled good is not placed within the scope

in the entirety.  To the contrary, "[t]he scope does not include the non-aluminum extrusion

components of subassemblies or subject kits."  *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*,

76 Fed. Reg. at 30,654.  Commerce did not engage in an analysis of the subassemblies provision

in the Final Scope Ruling and did not construe or rely upon the subassemblies provision in

placing the assembled handles within the scope of the Orders.  Commerce found that the plastic

end caps were "analogous to washers" and therefore were "fasteners," further reasoning that "the

---

[2] The reference to "finished goods 'kit'" is to the following exclusion in the scope
language:

> The scope also excludes finished goods containing aluminum extrusions that are
> entered unassembled in a "finished goods kit."  A finished goods kit is understood
> to mean a packaged combination of parts that contains, at the time of importation,
> all of the necessary parts to fully assemble a final finished good and requires no
> further finishing or fabrication, such as cutting or punching, and is assembled "as
> is" into a finished product.  An imported product will not be considered a
> "finished goods kit" and therefore excluded from the scope of the investigation
> merely by including fasteners such as screws, bolts, *etc*. in the packaging with an
> aluminum extrusion product.

*AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

handles at issue fall inside the language of the scope that includes 'aluminum extrusions which are shapes and forms, produced by an extrusion process.'" *Final Scope Ruling* 18 (footnote omitted).

Noting that "Commerce did not rely on the 'subassemblies' provision in the general scope language" in concluding that the assembled handles were subject merchandise, the court opined that "[t]his is understandable, as the provision expressly applies to 'partially assembled merchandise.'" *Whirlpool I*, 40 CIT at __, 144 F. Supp. 3d at 1303. The court added that "[t]he uncontradicted record evidence is that the assembled handles are imported in a form in which they require no further assembly or processing prior to their intended use." *Id.*, 40 CIT at __, 144 F. Supp. 3d at 1303. The court quoted language in the Final Scope Ruling in which Commerce had found, with respect to Whirlpool's assembled handles for refrigerator doors, that these handles "are ready for attachment to the refrigerator door upon importation." *Id.*, 40 CIT at __, 144 F. Supp. 3d at 1303 (quoting *Final Scope Ruling* 5).

The Final Scope Ruling concluded, additionally, that the assembled handles did not qualify for the "finished merchandise exclusion" set forth in the scope language of the Orders. *Final Scope Ruling* 17-20. The finished merchandise exclusion places outside the scope of the Orders "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." *AD Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654.

Addressing the finished merchandise exclusion, *Whirlpool I* opined that "Commerce presents no convincing reason why the plain language of this exclusion, which appears to describe the assembled handles, would not be dispositive were the general scope language

presumed to describe these goods." *Whirlpool I*, 40 CIT at __, 144 F. Supp. 3d at 1304. The

court rejected the Department's reasoning that an assembled handle does not qualify for the

finished merchandise exclusion because it consists solely of an aluminum extrusion and

"fasteners" (which Commerce, in a conclusion the court considered unreasonable, considered the

plastic end caps to be). The court pointed out that "[i]n setting forth the finished merchandise

exclusion in the scope language of the Orders, Commerce made no mention of an exception for

fasteners." *Id.*, 40 CIT at __, 144 F. Supp. 3d at 1304. *Whirlpool I* rejected the Department's

reliance on a previous scope ruling (Final Scope Ruling on J.A. Hancock, Inc.'s Geodesic

Structures (July 17, 2012)), which the court ruled inapposite because it involved a disassembled

good. *Id.*, 40 CIT at __, 144 F. Supp. 3d at 1304. According to the analysis in *Whirlpool I*, even

if the end caps were considered to be fasteners, "the scope language of the Orders could not

reasonably be interpreted to include the assembled kitchen appliance door handles at issue in this

case." *Id.*, 40 CIT at __, 144 F. Supp. 3d at 1305.

     In response to *Whirlpool I*, Commerce determined, under protest, that Whirlpool's

assembled handles were outside the scope of the Orders, *Remand Redetermination*, and the court

sustained this decision, *Whirlpool II*, 40 CIT at __, 182 F. Supp. 3d at 1313, 1316. The

Aluminum Extrusions Fair Trade Committee, defendant-intervenor in this case, appealed the

judgment entered in *Whirlpool II* to sustain the Remand Redetermination. In *Whirlpool III*, the

Court of Appeals vacated those portions of *Whirlpool I* holding that the general scope language

of the Orders did not describe Whirlpool's assembled handles and instructed this Court to vacate

the Department's April 2016 Remand Redetermination and reinstate the portion of the August

2014 Final Scope Ruling concluding that the assembled handles fall within the general scope

language. *Whirlpool III*, 890 F.3d at 1309, 1311.

In *Whirlpool III*, the Court of Appeals stated that "[t]he general scope language unambiguously includes aluminum extrusions that are part of an assembly." *Id.* at 1309. "The Orders explicitly include aluminum extrusions 'that are assembled after importation' in addition to 'aluminum extrusion components that are attached (e.g. by welding or fasteners) to form subassemblies.'" *Id.* (quoting *AD Order*, 76 Fed. Reg. at 30,650-51).

Although rejecting *Whirlpool I*'s conclusion that the general scope language did not describe the assembled handles, *Whirlpool III* affirmed certain other conclusions in that opinion and order. The Court of Appeals ruled, as did *Whirlpool I*, that the Department's decision that the finished merchandise exclusion did not apply to the assembled handles rested on a misinterpretation of the scope language. Specifically, Commerce erred in construing the "fasteners exception," which the scope language specified for the finished goods kit exclusion, to apply also to the finished merchandise exclusion. The Court of Appeals held, accordingly, that the scope language did not permit Commerce to conclude, as it did in the Final Scope Ruling, that the assembled handles failed to qualify for the finished merchandise exclusion on the ground that the parts in the assembly that were not aluminum extrusions were "fasteners." *Whirlpool III*, 890 F.3d at 1310. Having held the Department's interpretation of the finished merchandise exclusion to be impermissible, the Court of Appeals directed that "[o]n remand, Commerce will be given an opportunity to arrive at a legally permissible interpretation of the finished merchandise exclusion and Whirlpool's assembled handles should be reassessed in light of that interpretation." *Id.* at 1311 (citing *Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 783 (Fed. Cir. 1995) *as corrected on reh'g* (Sept. 1, 1995)).

The court directs Commerce to reach a new determination in conformance with the opinion of the Court of Appeals in *Whirlpool III*. Specifically, Commerce must determine

whether Whirlpool's assembled handles, in the form in which they are entered, constitute

"finished merchandise containing aluminum extrusions as parts that are fully and permanently

assembled and completed at the time of entry, such as finished windows with glass, doors with

glass or vinyl, picture frames with glass pane and backing material, and solar panels." *AD

Order*, 76 Fed. Reg. at 30,651; *CVD Order*, 76 Fed. Reg. at 30,654; *see Whirlpool III*, 890 F.3d

at 1311. As required by the holding of *Whirlpool III*, Commerce is precluded from reaching a

determination that the finished merchandise exclusion is inapplicable on the ground that some or

all of the non-aluminum-extrusion components in the five-piece assembly comprising an

assembled handle are considered by Commerce to fall within the meaning of the term

"fasteners." *See Whirlpool III*, 890 F.3d at 1311 & n.4.

Should Commerce determine that the assembled handles are within the scope of the

Orders despite the finished merchandise exclusion, it must explain its reasoning and also must

clarify whether it is concluding that the handles in their entirety, or only the extruded aluminum

components therein, are within the scope of the Orders and provide reasons for that conclusion.

In doing so, it must address the scope language providing that "[t]he scope does not include the

non-aluminum extrusion components of subassemblies." *AD Order*, 76 Fed. Reg. at 30,651;

*CVD Order*, 76 Fed. Reg. at 30,654. *See Whirlpool III*, 890 F.3d at 1309 (noting that the Orders

explicitly include, *inter alia*, "aluminum extrusions that are attached (e.g., by welding or

fasteners) to form subassemblies.").

### III.  CONCLUSION AND ORDER

In compliance with the opinion and mandate of the Court of Appeals in *Whirlpool III*,

upon consideration of all papers and proceedings had herein, and upon due deliberation, it is

hereby

**ORDERED** that the Department's Remand Redetermination (Apr. 15, 2016) be, and hereby is, vacated; it is further

**ORDERED** that the portions of the Department's Final Scope Ruling (Aug. 4, 2014) concluding that Whirlpool's assembled handles are described by the general scope language of the Orders be, and hereby are, reinstated; it is further

**ORDERED** that the remaining portions of the Department's Final Scope Ruling (Aug. 4, 2014) be, and hereby are, vacated; it is further

**ORDERED** that Commerce shall file, within ninety (90) days of the date of this Opinion and Order, a new determination upon remand ("Second Remand Redetermination") that, in conformance with the requirements of *Whirlpool III* and this Opinion and Order, reaches a new determination of whether Whirlpool's assembled handles qualify for the "finished merchandise" exclusion that is set forth in the scope language in the Orders; it is further

**ORDERED** that if Commerce decides that the assembled handles are subject merchandise, it must clarify whether the entire assembly, or only the extruded aluminum component, is within the scope of the Orders; it is further

**ORDERED** that plaintiff and defendant-intervenor may file comments on the Second Remand Redetermination within thirty (30) days from the date on which the remand redetermination is filed; and it is further

**ORDERED** that defendant may file a response to the comments within fifteen (15) days from the date on which the last comment is filed.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: January 14, 2019
New York, New York